RECEIVED

FEB 2 8 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

BY: _____

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

ALLEN RAY GILBERT, individually
and as executor of the succession of
Frances M. Gilbert, Kathleen G. Buchanan,
and James R. Gilbert

versus

FRONTERA PRODUCE, LTD., PRIMUS
GROUP, INC., d/b/a "PRIMUS LABS" and
THE KROGER COMPANY

CIVIL ACTION NO. 12-2754
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion to dismiss filed by one of the defendants in this
case, Primus Group, Inc. ("Primus"), pursuant to Federal Rule of Civil Procedure
12(b)(6). See Record Document 38. For the reasons set forth below, Primus's motion
is **DENIED**.

## I. BACKGROUND

The plaintiffs in this negligence action are Allen Ray Gilbert, individually and
as executor of the succession of Frances M. Gilbert ("Gilbert"), Kathleen G.
Buchanan, and James R. Gilbert (collectively "plaintiffs"). Defendant Frontera
Produce, Ltd. ("Frontera") distributes cantaloupes and other food products grown by

Jensen Farms.   At all relevant time periods, defendant The Kroger Company ("Kroger") sold cantaloupes produced by Jensen Farms to consumers.   Defendant Primus is a California company that provides auditing services to agricultural firms. Bio Food Safety is a Texas company that provides agricultural auditing services.   The plaintiffs' complaint alleges that Gilbert died during a nationwide outbreak of <u>Listeria monocytogenes</u> ("listeria").   Specifically, the plaintiffs claim that Gilbert contracted a listeria infection after purchasing and consuming contaminated cantaloupes grown by Jensen Farms, distributed by Frontera, and sold by Kroger.

According to the plaintiffs, Primus is at fault because it contracted with Jensen Farms (or Frontera, or both) to perform an audit of Jensen Farms to ensure their facilities, practices, and procedures met or exceeded the applicable standards of care. The plaintiffs allege that the parties to this audit contract intended to ensure that the food Jensen Farms produced, including cantaloupes, was safe for consumption and not contaminated by potentially lethal pathogens, including listeria.   The plaintiffs further allege that Primus subcontracted the job to Bio Food Safety, forming an agency relationship such that Primus is liable for the acts and omissions of negligence of Bio Food Safety and its employees.   Bio Food Safety employee James Dilorio ("Dilorio") conducted an audit of Jensen Farms on or about July 25, 2011.   Dilorio gave Jensen Farms a "superior" rating and a score of 96%.   The plaintiffs claim that

2

DiIorio did not perform the audit with reasonable care.  According to the plaintiffs, Frontera represented to retail sellers and the public generally that its products were "Primus certified."

About one week after DiIorio performed his audit, the Centers for Disease Control and Prevention ("CDC") identified the first victim of the listeria outbreak. According to the plaintiffs, there were five different strains of listeria identified during the outbreak.  On or about September 10, 2011, public health officials from Colorado and the Food and Drug Administration ("FDA") conducted an inspection of Jensen Farms, collecting cantaloupes and environmental samples for testing.  Of the thirty-nine environmental samples collected from the facility, thirteen tested positive for three of the five listeria outbreak strains.  Additionally, cantaloupes collected from Jensen Farms tested positive for two of the five listeria outbreak strains.[1]

On September 14, 2011, Jensen Farms recalled all cantaloupes that were distributed between July 29, 2011, and the date of the recall.  On or about the date of the recall, Gilbert began suffering symptoms consistent with a listeria infection.  She

---

[1] As best the court can tell from the pleadings, Jensen Farms's facility and cantaloupes did not collectively test positive for all five of the listeria outbreak strains.  Rather, both environmental and cantaloupe samples tested positive for two strains, and environmental samples tested positive for an additional strain.

was admitted to the Willis Knighton Pierremont Health Center one day after the recall, September 15, 2011, where her blood tested positive for one of the five different strains of listeria identified by public health officials as a cause of the outbreak. The plaintiffs contend that cantaloupes contaminated with listeria were produced by Jensen Farms, distributed by Frontera to Kroger, made available for sale at a Kroger store in Bossier City, Louisiana, and purchased and ultimately consumed by Gilbert. Gilbert passed away on September 22, 2011, from complications arising from the listeria infection.

Based on the results of its inspection that occurred on September 10, 2011, the FDA initiated an environmental assessment of Jensen Farms with the assistance of state and local officials. The environmental assessment took place on September 22 and 23, 2011. The FDA issued a written report on October 19, 2011, detailing its findings. The FDA's report noted numerous problems with the design of Jensen Farms's facility and equipment that contributed to the growth and spread of listeria. Moreover, the FDA's report criticized how Jensen Farms handled cantaloupes after they were harvested, in particular for failing to pre-cool the cantaloupes before placing them in cold storage, which provided ideal conditions for listeria to grow. See Record Document 1, Ex. 1 at ¶24.

In October and December 2011, FDA officials held briefings before the House

Committee on Energy and Commerce to further investigate the listeria outbreak. During these briefings, FDA officials pointed to multiple problems at the Jensen Farms facility that called into question the safety of products grown and stored there. See id., Ex. 1 at ¶25. The plaintiffs argue that, in light of the findings of the FDA and other public health officials in the months following Dilorio's audit of the Jensen Farms facility, Dilorio was negligent when he performed the audit and gave Jensen Farms a "superior" rating and a score of 96%. The plaintiffs claim that had Dilorio performed the audit in a non-negligent manner, he would have discovered the problems identified by the FDA and given Jensen Farms a lower rating and evaluation. Moreover, had Jensen Farms's problems been identified by Dilorio's audit, the plaintiffs allege that Jensen Farms would not have distributed the cantaloupes that were contaminated with listeria and ultimately caused Gilbert's death.

Primus filed the instant motion to dismiss on September 6, 2013. See Record Document 38. Oppositions to the motion were filed by the plaintiffs and Frontera, who has a cross-claim against Primus. See Record Documents 44 and 46. Primus filed a reply brief in support of its motion. See Record Document 49. The plaintiffs filed a motion for leave to file a supplement to their opposition, specifically seeking to introduce as an exhibit an order in a related case, where the United States District

5

Court for the Western District of Oklahoma denied a motion to dismiss filed by

Primus. See Record Document 52. The court granted the motion for leave and

admitted the order into the record. See Record Documents 55 and 56. Primus timely

filed a response to the plaintiffs' supplemental opposition. See Record Document

59.[2]

## II. ANALYSIS

**A.     Rule 12(b)(6) Standard.**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to

dismiss a claim for "failure to state a claim upon which relief can be granted." In

considering a motion to dismiss for failure to state a claim, a district court must limit

itself to the contents of the pleading and its attachments. See Fed. R. Civ. P. 12(b)(6);

Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). A

pleading will survive a motion to dismiss if it alleges "enough facts to state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570,

127 S. Ct. 1955, 1973 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

---

[2] Primus characterized its filing as a response to the plaintiffs' motion for
leave. The court, having already ruled on the motion for leave and based on the
substantive arguments contained in the filing, takes notice that the filing is
intended as a supplemental reply.

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009). The court must accept all of the plaintiffs' allegations as true. See Twombly, 550 U.S. at 550, 127 S. Ct. at 1962. However, the plaintiffs' pleading must contain more than a "formulaic recitation of the elements of a cause of action." Id. at 555, 127 S. Ct. at 1965. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679, 129 S. Ct. at 1950.

**B.    Causes Of Action Against Primus.**

The source of negligence law in Louisiana is Louisiana Civil Code article 2315, which states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A). In determining issues of negligence, Louisiana courts employ a duty-risk analysis. See Long v. State ex rel. Dep't of Transp. & Dev., 916 So. 2d 87, 101 (La. 2005); Perkins v. Entergy Corp., 782 So. 2d 606, 611 (La. 2001). A duty-risk analysis requires a plaintiff to show five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach

7

element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

Long, 916 So. 2d at 101.  Under the duty-risk analysis, all elements must be affirmatively answered for a plaintiff to recover.  See LeJeune v. Union Pac. R.R., 712 So.2d 491, 494 (La. 1998).  Thus, if the plaintiffs have not pled sufficient facts in support of any one of these elements, the defendant's motion should be granted.

**1.   Duty.**

**a. General Duty To Exercise Reasonable Care And Specific Duty To Avoid Making A Negligent Misrepresentation.**

The plaintiffs first set out a general negligence cause of action against Primus. "A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." Posecai v. Wal-Mart Stores, Inc., 752 So. 2d 762, 766 (La. 1999). "Whether a duty is owed is a question of law." Peterson v. Gibraltar Sav. & Loan, 733 So. 2d 1198, 1204 (La. 1999). "There is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another." Boykin v. La. Transit Co., Inc., 707 So. 2d 1225, 1231 (La. 1998). The ultimate question is "whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm." Barrie v. V.P. Exterminators, Inc.,

625 So. 2d 1007, 1016 (La. 1993).

In arguing that Primus owed a duty of reasonable care to Gilbert, the plaintiffs

particularly rely on Restatement (Second) of Torts §324A, which reads as follows:

> One who undertakes, gratuitously or for consideration, to
> render services to another which he should recognize as
> necessary for the protection of a third person or his things,
> is subject to liability to the third person for physical harm
> resulting from his failure to exercise reasonable care to
> protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk
> of such harm, or
> (b) he has undertaken to perform a duty owed by the other
> to the third person, or
> (c) the harm is suffered because of reliance of the other or
> the third person upon the undertaking.

The Louisiana Supreme Court has recognized that Restatement (Second) of Torts

§324A can establish a duty owed to third persons. See Bujol v. Entergy Servs., Inc.,

922 So. 2d 1113, 1129 (La. 2004).  Specifically, a party assumes a duty to a third

person when the party undertakes to render services that the party should recognize

as necessary to protect the third person. See id.

Additionally, the plaintiffs' complaint alleges a negligent misrepresentation

claim against Primus.  The Louisiana Supreme Court has recognized that Louisiana

law allows for a cause of action for negligent misrepresentation. See Daye v. Gen.

Motors Corp., 720 So. 2d 654, 659 (La. 1998). Louisiana recognizes causes of action

for negligent misrepresentation even when there is no privity of contract between a plaintiff and a defendant. See Barrie, 625 So. 2d at 1016.  The majority of plaintiffs who have brought negligent misrepresentation claims under Louisiana law have sought damages for pecuniary losses. The plaintiffs in this case, though, are alleging a physical injury—specifically, that Gilbert's listeria infection and ultimate death were caused by Primus's negligent acts and misrepresentations.

The Louisiana Supreme Court has recognized that negligent misrepresentations resulting in physical harm are distinguishable from claims alleging a pecuniary loss. See id. at 1011; Devore v. Hobart Mfg. Co., 367 So. 2d 836, 839 (La. 1979).  The scope of liability for negligent misrepresentations resulting in physical harm is broader than those that result in pecuniary losses only. See Restatement (Second) of Torts §311 cmt. a (1965).  Both the Louisiana Supreme Court and the Fifth Circuit Court of Appeals have noted that the standard of conduct for a negligent misrepresentation claim alleging physical harm is derived from Restatement (Second) of Torts §311. See Devore, 367 So. 2d at 839; Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 627 (5th Cir. 1999).  Moreover, the Fifth Circuit in Guidry noted that a negligent misrepresentation claim alleging physical harm has the following elements: 1) an actor negligently gives false information to another person; 2) that person reasonably relied on the false information and took some foreseeable action; and 3)

the action resulted in physical harm either to that person or to a third person whom
the negligent actor could reasonably expect to be put in peril by the action taken in
reliance on the false information.  See Guidry, 188 F.3d at 627.

The parties have not identified, and the court has not found, any cases
addressing whether an agricultural auditing company that inspects and audits a food
production facility owes any duty to third persons who ultimately consume the food
products.  The parties have identified a number of cases they claim are relevant to the
duty inquiry, some involving auditors and inspectors in other contexts.  Although
many of the cases cited involved pecuniary losses rather than physical harm, they are
nevertheless instructive to negligent misrepresentation claims generally.  A careful
analysis of these cases supports a finding that Primus may have owed a duty to
Gilbert.

Primus cites First National Bank of Commerce v. Monco Agency Inc., 911
F.2d 1053 (5th Cir. 1990), which addresses the duty of accountants to non-clients in
the financial realm.  An accounting firm prepared annual audits for a client which the
firm knew would be given to one bank in connection with an existing loan.  Three
months after the firm issued its 1980 audit, the client presented that audit to a second
bank to obtain a more favorable loan.  The second bank relied on the 1980 audit,
which presumably contained false information, when it issued the client a loan.  The

11

client immediately defaulted on the new loan, and the second bank brought a negligent misrepresentation claim against the accounting firm. See First Nat'l Bank of Commerce, 911 F.2d at 1055-56.

The Fifth Circuit analyzed the three different rules that states apply to determine accountants' liability to non-clients. First, there is the "near privity" rule, which holds accountants liable to non-clients only if the accountant has actual knowledge that his work product will be relied upon by a non-client and the accountant manifests some conduct signifying an understanding that the non-client will rely on the accountant's work product. The second rule, called the "reform" rule, imposes a duty on accountants to all non-clients who could foreseeably rely on information the accountant prepared. Third, the "Restatement" rule from the Restatement (Second) of Torts imposes liability on accountants if they know that a non-client will rely on their work product. The Restatement rule is essentially a more moderate version of the "near privity" rule. See id. at 1058-59. The Fifth Circuit ultimately adopted the Restatement rule, holding that accountants are only liable to non-clients for misinformation in an audit if the accountants had actual knowledge that a limited group of non-clients would rely on the audit. See id. at 1062. Because the second bank could not show that the accounting firm had actual knowledge that the client was going to provide the bank with the 1980 audit, the bank's claims were

dismissed on summary judgment. See id. at 1063.

The Fifth Circuit's analysis of the three liability rules, in particular the reform rule, is quite informative. The reform rule is the broadest of the three rules and protects all third parties who could foreseeably rely upon a defective audit. See id. at 1059. States following the reform rule apparently liken defective audits to defectively manufactured products because they can both injure consumers once in the stream of commerce. See id. This rationale is even more compelling when applied to the facts of the instant case. A negligent audit of a food processing facility can foreseeably result in products being contaminated before they enter the stream of commerce. Moreover, contaminated food can cause physical harm in the same way that defectively manufactured products could. Thus, the reform rule seems better suited to the facts of this case than either the near-privity rule or Restatement rule.

Primus also cites to Audler v. CBC Innovis Inc., 519 F.3d 239 (5th Cir. 2008), another case involving a pecuniary loss. The plaintiff in Audler refinanced his home in 2001. As required by federal law, the lender hired CBC Innovis Inc. ("CBC") to determine whether the plaintiff's home was located in a special flood hazard area ("SFHA"). Property located in a SFHA must be covered by adequate flood insurance. CBC issued a report to the lender finding that the plaintiff's home was not in a SFHA. In 2005, the plaintiff's home flooded during Hurricane Katrina. The plaintiff sued

CBC, claiming it negligently misrepresented that his home was not in a SFHA, which the plaintiff relied on when he failed to obtain flood insurance. See Audler, 519 F.3d at 245-46.

The plaintiff in Audler argued that CBC owed him a duty to provide accurate information in its report because CBC knew he would receive a copy of the report and would rely on the information therein. The court disagreed, holding that CBC did not owe any duty to the plaintiff. See id. at 249-51. Specifically, the court found that Audler was not the intended beneficiary of the lender hiring CBC to conduct a flood zone determination. Rather, the lender hired CBC to ensure it complied with federal law. See id. at 252. Having found no duty was owed, the court granted CBC's 12(b)(6) motion to dismiss. See id. at 254.

There is nothing in the pleadings to suggest that Jensen Farms hired Primus to perform an audit of its facilities to comply with any federal or state law. Consequently, the analysis in Audler will not carry much weight in this case. However, the Fifth Circuit noted four factors that guided its analysis as to whether the defendant owed a duty to the plaintiff, a third party lacking privity with the defendant. These factors, taken from the Louisiana Supreme Court's decision in Barrie, are: 1) whether the defendant could expect the plaintiff would receive and rely upon the information at issue; 2) whether the plaintiff was part of a limited group for whose

14

benefit the information was provided; 3) whether the defendant received compensation for preparing the information; and 4) whether finding the defendant owed the plaintiff a duty would serve public policy. See id. at 250; Barrie, 625 So. 2d at 1017-18. These factors will ultimately guide the court's analysis in this case.

All of the parties cited Barrie, one of Louisiana's most influential negligent misrepresentation cases. In Barrie, the plaintiffs agreed to purchase a home, subject to the seller providing a report that the home was free of termites. The seller hired V.P. Exterminators, Inc. ("V.P.") to perform a termite inspection. V.P. issued a report to the seller that the house was termite free. The seller then turned this report over to the plaintiffs and the sale was completed. Three days after the sale was finalized, the plaintiffs discovered extensive termite damage. The plaintiffs brought a negligent misrepresentation claim against V.P. The trial court granted V.P.'s exception of no cause of action and dismissed the claim, and the appellate court affirmed. See Barrie, 625 So. 2d at 1008-11.

The Louisiana Supreme Court reversed, holding that, despite the plaintiffs being third parties to V.P.'s contract with the seller and a lack of any direct communication between V.P. and the plaintiffs, V.P. owed a duty to the plaintiffs to perform the termite inspection in a non-negligent manner because V.P. knew the plaintiffs were intended users of the report. Specifically, V.P. knew that the seller

15

intended to provide the termite inspection report to the prospective buyers in order to facilitate the closing of the sale. Additionally, V.P. was paid to perform the inspection and issue its report. See id. at 1016-17. Finally, the court noted that imposing a duty would best serve public policy by "promot[ing] the maintenance of a high quality of services" by termite inspectors. Id. at 1017.

In the present case, three of the four Barrie factors weigh in favor of finding that Primus owed Gilbert a duty. Assuming that Primus knew that Jensen Farms marketed its cantaloupes to retailers and the public as "Primus Certified" as alleged in the plaintiffs' complaint, Primus should have been aware that anyone who purchased a Jensen Farms cantaloupe, including Gilbert, might rely on that certification. Primus could therefore have expected the plaintiff would receive and rely upon the information. The third factor favors the plaintiffs because Primus was compensated under its contract to perform the audit. Additionally, it will best serve public policy to find that Primus owes a duty to third persons who might rely on Primus as having certified that food produced at a particular facility, which Primus's subcontractor inspected and gave a "superior" rating, is safe to eat.

The most troublesome factor is the second one—whether the plaintiff was part of a limited group for whose benefit the information was provided. The most significant distinction between Barrie and the instant case relates directly to this

16

factor.  The inspector in <u>Barrie</u> knew there was a limited group of prospective buyers who would see the termite report.  In contrast, depending on how widespread the distribution of cantaloupes from Jensen Farms was, the results of the audit performed by Primus's subcontractor could potentially reach consumers all across the country. This is far from a limited group and would expose Primus to potentially exponential liability.  Nevertheless, in light of the serious public policy concern at issue here, the court finds that Primus should not be allowed to escape liability at this stage merely because the potential plaintiffs were vast in number.

The plaintiffs have pled sufficient facts to establish that a duty may have been owed.  Their complaint alleges that Primus was hired to perform an audit of the Jensen Farms facility.  Specifically, the plaintiffs claim the purpose of the contract was to ensure the facilities, practices, and procedures in place at Jensen Farms met relevant standards and guidelines, and ultimately to ensure that food produced by Jensen Farms was safe for human consumption.  Moreover, the plaintiffs have pled that Primus's subcontractor, Bio Food Safety, performed an audit of Jensen Farms on or about July 25, 2011, and that the report gave Jensen Farms a "superior" rating and score of 96%.  The plaintiffs have further alleged that, before and after this particular audit, Jensen Farms marketed its food products (including cantaloupes) as "Primus Certified."  Because the motion at issue is a Rule 12(b)(6) motion to dismiss, the

17

court must take all of these well-pled facts as true. Therefore, the court finds there are sufficient facts pled to show that Primus may have owed a duty to Gilbert to conduct its audit of Jensen Farms with reasonable care and to avoid negligently providing false information in its report.

### b. Duty To Exercise Reasonable Care In Hiring And Supervising Its Subcontractor.

The plaintiffs have alleged that Primus owed a duty to exercise reasonable care in hiring and supervising its subcontractor, Bio Food Safety. The Louisiana Supreme Court has held that such a cause of action is cognizable under Louisiana tort law. See Roberts v. Benoit, 605 So. 2d 1032, 1044 (La. 1991). The complaint alleges sufficient facts to show such a duty may have been owed. Primus contracted with Jensen Farms to inspect and audit its facilities, practices, and procedures, and Primus then subcontracted this responsibility to Bio Food Safety. Primus thus arguably had a duty to ensure that the subcontractor it hired was qualified and capable of performing the job, and also to ensure that Bio Food Safety exercised reasonable care when performing the job. Therefore, the court finds there are sufficient facts pled to show that Primus may have owed a duty to exercise reasonable care in hiring and supervising its subcontractor.

## 2.    Scope Of Protection.

Having established that Primus may have owed two distinct duties, the next question is whether the plaintiffs' alleged injuries are within the scope of those duties. The scope of protection element essentially asks whether the duty owed by the defendant was meant to protect a particular plaintiff from a particular type of harm. See Roberts, 605 So. 2d at 1044-45.   The court must ultimately make a policy determination when deciding the scope of protection element. See id. at 1044; Fowler v. Roberts, 556 So. 2d 1, 8-9 (La. 1989).   This inquiry focuses on the ease of association between the risk of the injury and the duty.   See Rando v. Anco Insulations Inc., 16 So. 3d 1065, 1092 (La. 2009); Roberts, 605 So. 2d at 1045. The court may consider the economic impact its decision will have on society, the nature of the defendant's activities, whether the victim was at fault, the possibility of a flood of litigation from similarly situated persons, and moral and societal factors.   See Meany v. Meany, 639 So. 2d 229, 234 (La. 1994).

The court finds that the injuries suffered by Gilbert are within the scope of protection of the duties in question. Primus and its subcontractor, Bio Food Safety, perform auditing services for food production companies, effectively placing them in a position to protect the public by ensuring food is being produced in a safe manner and in compliance with the law and applicable industry standards. Members of the

public who purchase these foods are at the end of the causation chain and can thus do little to ensure the food is safe to consume. In contrast, Primus has an opportunity to discover and point out problems at the production stage, well before the public is placed in any danger.

Primus argues it should not be liable because the national listeria outbreak was an unforeseeable event outside of Primus's control. Primus likens the outbreak to levee systems failing during Hurricane Katrina due to eroded wetlands, which the Fifth Circuit held was not a foreseeable event. See In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 212-13 (5th Cir. 2010). Additionally, Primus claims it is not liable because it lacked adequate control to prevent the plaintiffs' injuries. The court finds neither of these arguments to be persuasive. In contrast to the unpredictable devastation that was Hurricane Katrina, it is foreseeable that a food production facility that is not adequately inspected might produce contaminated food that would be unsafe for consumption. As for Primus's claims about lack of control, the court is persuaded by the plaintiffs' allegation that Jensen Farms would not have distributed cantaloupes from its facility if it had failed the audit performed by Primus's subcontractor in July 2011. As the Western District of Oklahoma stated in a related case brought against Primus, "it would run contrary to common sense that the subsequent distribution, sale, and consumption of cantaloupe would be reasonably

unforeseeable to a food safety auditing company doing food safety audits at a facility that processes and packages cantaloupe for the purpose of it being distributed, sold, and consumed." Record Document 56 at 18.[3]   Thus, Primus was positioned to prevent the cantaloupes from ever being distributed, which would have prevented the plaintiffs' injuries.

The services that Primus provides are unquestionably important to public safety, and Primus therefore must be held to a high standard of care.  Assuming, for now, that Primus breached its duties and the breach was a cause-in-fact of the injuries alleged in the plaintiffs' petition, the court sees no reason why Primus should be immune from liability.  The court finds an ease of association between the injuries suffered by Gilbert and the plaintiffs and Primus's duty to ensure the audit of Jensen Farms was performed with reasonable care and to avoid negligently providing false information that Jensen Farms as well as distributors, retailers, purchasers, and consumers of the cantaloupes would all reasonably rely on.  Thus, the scope of protection element has been sufficiently pled.

### 3.   Breach And Cause-In-Fact.

Having established that Primus may have owed two distinct duties and that the

---

[3] The court recognizes, as Primus has argued, that the Western District of Oklahoma's ruling is not binding authority.

injuries alleged are within the scope of protection of those duties, the next questions are whether Primus breached the duties it owed and, if so, whether Primus's actions were a cause-in-fact of the plaintiffs' injuries. Both are questions of fact. See Hanks v. Entergy Corp., 944 So. 2d 564, 580 (La. 2006). "A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm." Lasyone v. Kan. City S. R.R., 786 So. 2d 682, 691 (La. 2001). Actions that are a cause-in-fact of a victim's injuries do not necessarily constitute a breach. See Boykin, 707 So. 2d at 1230-32 (reversing the trial court and holding that the Department of Transportation and Development ("DOTD") did not breach any applicable duty while also affirming the lower court's finding that the DOTD's actions were a cause-in-fact of the victim's injuries).

The court finds there are sufficient facts pled in support of the breach and cause-in-fact elements. Specifically, the plaintiffs' complaint alleges that Dilorio, an employee of Primus's subcontractor, conducted an audit of Jensen Farms on or about July 25, 2011, and that the result was a "superior" rating and a 96% score. The plaintiffs further allege that a subsequent investigation by the FDA and other public health officials, which was performed less than two months after Dilorio's audit, discovered a number of problems that should have been apparent when Dilorio conducted his audit, implying that Dilorio must have been negligent when conducting

22

the audit to have missed all of these problems.  These facts are enough for the plaintiffs to survive the instant motion.  Additionally, the plaintiffs allege that, had Dilorio's audit pointed out these shortcomings, Jensen Farms would have ceased production and not distributed any cantaloupes, which would have prevented Gilbert's death.  Dilorio's failure to discover these issues and Primus's failure to correct this mistake by its subcontractor could be a substantial factor in having caused Gilbert's death and the plaintiffs' injuries.  Thus, the plaintiffs have pled sufficient facts to support both the breach and cause-in-fact elements.

### 4.    The Damages Element.

The final element that must be supported by sufficiently pled facts is damages. The plaintiffs' complaint seeks recovery of damages for and relating to Gilbert's injuries and death, mental anguish, loss of consortium, emotional distress, and other alleged injuries.  Primus contends that the plaintiffs' claim for loss of consortium damages should be dismissed as a matter of law.  Specifically, Primus argues that loss of consortium damages are not available to Gilbert's children, Kathleen and James, because they were adults when Gilbert died.

Louisiana Civil Code article 2315 allows recovery for loss of consortium damages.  Moreover, Louisiana courts have recognized that adult children can recover loss of consortium damages. See Turner v. Lyons, 867 So. 2d 13, 22 (La.

App. 4th Cir. 2004); <u>Farley v. State Through Dept. of Transp. and Dev.</u>, 680 So. 2d 750, 754 (La. App. 1st Cir. 1996).  Thus, as a matter of law, all of the plaintiffs, including Kathleen and James, are entitled to seek damages for loss of consortium. Insofar as Primus argues their claim for loss of consortium damages has no value, that argument is premature and should be reserved for the fact finder.

## III. CONCLUSION

For the reasons set forth herein, the court finds that the plaintiffs have pled sufficient facts in their complaint to state a cause of action against Primus.  Thus, Primus's motion to dismiss is **DENIED.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana this 28 day of February, 2014.

JUDGE TOM STAGG

24